**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK MAURER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BERKADIA PROPRIETARY HOLDING, LLC, BERKADIA COMMERCIAL MORTGAGE, LLC, and BERKADIA COMMERCIAL MORTGAGE, INC.,<br><br>Defendants. | Civil Action No. 1:26-cv-02364<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Mark Maurer ("Plaintiff") brings this Class Action Complaint on behalf of himself, and all others similarly situated, against Defendants Berkadia Proprietary Holding LLC, Berkadia Commercial Mortgage LLC, and Berkadia Commercial Mortgage Inc. ("Defendants" or collectively "Berkadia"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE CASE

1. Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and other similarly situated individuals ("Class Members") personally identifying information ("PII" or "Private Information").

2. Berkadia is a leader in the commercial real estate industry that specializes in investment sales, mortgage banking, and loan servicing.[1] Defendant services commercial real estate properties across the United States.

3. Plaintiff and Class Members are individuals who were required to indirectly and/or directly provide Defendants with their Private Information. By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Berkadia has a resulting duty to secure, maintain, protect, and safeguard the Private Information that they collect and store against unauthorized access and disclosure through reasonable and adequate data security measures.

4. Despite Berkadia's duty to safeguard the Private Information of Plaintiff and Class Members, their Private Information in Defendants' possession was compromised when an unauthorized ransomware group, ShinyHunters, gained access to Defendants' computer system and exfiltrated sensitive data stored therein on or about March 19, 2026 (the "Data Breach").

5. The Data Breach occurred as a result of Defendant's failure to adequately secure Plaintiff's and Class Members' PII from unauthorized access and exfiltration.

6. When cybercriminals infiltrated Defendants' inadequately protected network servers and accessed the highly sensitive PII contained within their clients' records.

7. As of yet, upon information and belief, Defendants have not informed their customers of the Data Breach. Indeed, Plaintiff and Class Members were wholly unaware before posts about it began appearing on the Dark Web.

8. Berkadia maintained the PII of Plaintiff and Class Members in a negligent and/or reckless manner. In particular, the PII was maintained on Berkadia's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the

[1] *About us*, Berkadia, https://www.berkadia.com/aboutus/ (last visited March 19, 2026).

cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendants, and thus Defendants were on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

9. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

10. As a result, Plaintiff's and Class Members' PII was compromised by an cybercriminals. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

11. As a direct and proximate result of Defendants' failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now in the hands of cybercriminals.

12. Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their privacy, and similar forms of criminal mischief, risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

13. Plaintiff, on behalf of himself and all others similarly situated, alleges claims for negligence, breach of implied contract, unjust enrichment and declaratory judgment arising from the Data Breach. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard the Private Information in Defendants' custody to prevent

incidents like the Data Breach from reoccurring in the future, and for Defendants to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

## PARTIES

14. Plaintiff Mark Maurer is an adult, who at all relevant times, was a resident and citizen of the state of New York. Plaintiff is an accountholder of Defendants and, upon information and belief, reasonably believes his Private Information was compromised during the Data Breach.

15. Plaintiff has suffered actual injury from having his Private Information exposed and/or stolen as a result of the Data Breach, including: (a) required mitigation efforts, including researching the Data Breach and needing to monitor his financial statements to ensure his information is not used for identity theft and fraud; (b) damages to and diminution of the value of his Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

16. As a result of the Data Breach, and the sensitivity of the Private Information compromised, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

17. Defendant Berkadia Proprietary Holding LLC is a Delaware limited liability company with its principal executive office located at 521 Fifth Avenue, New York, NY 10175.

18. Defendant Berkadia Commercial Mortgage, LLC is a Delaware limited liability company with its principal executive office located at 521 Fifth Avenue, New York, New York 10175.

19. Defendant Berkadia Commercial Mortgage, Inc. is a Delaware corporation with its principal executive office located at 521 Fifth Avenue, New York, New York 10175.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendants.[2]

21. This Court has general personal jurisdiction over Defendants because they are New York citizens as their principal offices are located in New York.

22. This Court also has specific personal jurisdiction over Defendants because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendants reside in this District.

23. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendants reside in this District.

## FACTUAL BACKGROUND

24. Defendants are a leading commercial real estate services firm that provides mortgage banking, investment sales advisory, financing, and servicing for multifamily and commercial properties.

25. Plaintiff and Class Members are and/or were customers of Defendants.

---

[2] *See* 28 U.S.C. § 1332(d)(10) (stating that for purposes of CAFA jurisdiction, an unincorporated association deemed to be citizen of State where it has its principal place of business and under whose laws it is organized). *See also* 28 U.S.C. § 1332(c)(1) (stating that for purposes of CAFA jurisdiction, a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business).

26. As a condition of obtaining Defendants' services, Plaintiff and Class Members directly or indirectly entrusted Berkadia with their sensitive Private Information. Upon information and belief, this information included at a minimum, their names, addresses, and Social Security Numbers.

27. Plaintiff and Class Members value the confidentiality of their Private Information and, accordingly, have taken reasonable steps to maintain the confidentiality of their Private Information.

28. In entrusting their Private Information to Defendants, Plaintiff and Class Members reasonably expected that Defendants would safeguard their highly sensitive information.

29. By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Berkadia assumed equitable and legal duties to safeguard Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

30. Despite these duties, Berkadia failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to access and exfiltrate Plaintiff's and Class Members' Private Information in Defendants' possession.

**THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE**

31. Berkadia understood that the Private Information they collect was highly sensitive and of significant value to those who would use it for wrongful purposes.

32. Berkadia also knew that a breach of their computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

33. These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, Comcast, and many others.

34. Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[3]

35. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[4]

36. The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individual, businesses, and government entities in the U.S. In 2021, there were 6,670 publicly disclosed data breaches, exposing 16.8 billion records. The United States specifically saw a 12% increase in the total number of data breaches as compared to 2023.[5]

37. In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2024, 3.73 million people reported some form of identity theft and/or fraud.[6]

---

[3] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/

[4] *What To Know About Identity Theft*, FTC Consumer Advice (Sept. 2024), https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed March 19, 2026).

[5] *Flashpoint 2025 Global Threat Intelligence Report*, Flashpoint, https://flashpoint.io/resources/report/flashpoint-2025-global-threat-intelligence-gtir/ (last visited March 19, 2026).

[6] *Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20 Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited March 19, 2026).

38. The ramifications of Berkadia's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[7]

39. Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

40. The specific types of personal data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and other Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

41. **Social Security Numbers**—Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security Numbers cannot be easily replaced. Even when such numbers are replaced, the process

---

[7] *Report to Congressional Requesters, Personal Information, June 2007*, U.S. Gov't Accountability Office, https://www.gao.gov/new.items/d07737.pdf (last accessed March 19, 2026).

of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

42. Indeed, the Social Security Administration warns that the process of replacing a Social Security Number is a difficult one that creates other types of problems, and that it will not be a complete remedy for the affected person:

> You should know that other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same. If you receive a new SSN, you shouldn't use the old number anymore. For some victims of identity theft, a new number actually creates new problems. If the old credit information isn't associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit.

43. Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit - among other services. Often social security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

44. Based on the value of Plaintiff's and Class Members' PII to cybercriminals, Berkadia knew or should have known the importance of safeguarding the PII entrusted to them and of the foreseeable consequences if their data security systems were breached. Berkadia failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

**BERKADIA BREACHED THEIR DUTY TO PROTECT PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION**

45. On or about March 19, 2026, an unauthorized third party, ShinyHunters, gained access to Defendants' computer systems and successfully exfiltrated Private Information contained within their clients' records.

46. Defendants have yet to provide notice of the Data Breach to their customers or formally announce that the Data Breach has occurred.

47. On information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiff and Class Members. The cybercriminals were successful in exfiltrating sensitive information from Defendants' computer system.

48. All in all, the cybercriminals responsible for the Data Breach allege to have exfiltrated over five million records from Defendants' systems.

49. The Data Breach occurred as a direct result of Berkadia's failure to implement and follow basic security procedures to protect their current and former customers' Private Information that they had collected and stored.

**BERKADIA FAILED TO COMPLY WITH FTC GUIDELINES AND INDUSTRY BEST PRACTICES**

50. Berkadia is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

51. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[8]

52. Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems: [9]

a. Identify all connections to the computers where sensitive information is stored;

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

e. Pay particular attention to the security of their web applications - the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls - settings that determine which devices and traffic get through the firewall - to allow only trusted devices with a legitimate business need to access the

---

[8] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[9] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed March 19, 2026).

network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

53. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[10]

54. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

55. Berkadia failed to properly implement basic data security practices. Berkadia's failure to employ reasonable and appropriate measures to protect against unauthorized access to their customers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

---

[10] *Id.*

56. Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that companies of any size can use to evaluate and improve their information security controls.[11]

57. NIST publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security controls, network monitoring, breach detection, and incident response.[12] Upon information and belief, Defendants failed to adhere to the NIST guidance.

58. Further, cybersecurity experts have identified various best practices that should be implemented by entities in the financial industry, including the following:

i. Regularly assessing risks and auditing cybersecurity;
ii. Establishing a cybersecurity policy;
iii. Appointing a data protection officer;
iv. Securing networks;
v. Verifying user identities;
vi. Establishing secure password management;
vii. Continuously monitor user activity; and
viii. Manage third-party risks.[13]

[11] *See Framework for Improving Critical Infrastructure Cybersecurity*, National Institute of Standards & Technology (Apr. 16, 2018), App'x A, Table 2, available at https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.
[12] *Id.* at Table 2, 26-43.
[13] Yana Storchak, *12 Best Practices for Banking and Financial Cybersecurity Compliance*, Syteca (April 2, 2025), https://www.syteca.com/en/blog/banking-and-financial-cyber-security-compliance.

59. Upon information and belief, Defendants' failure to protect the Private Information they were entrusted is a result of their failure to adopt reasonable safeguards as required by the FTC Guidelines, NIST guidance, and industry best practices.

60. Berkadia was at all times fully aware of their obligations to protect the PII of their customers given the reams of PII that they had access to as a result of the nature of their business. Berkadia was also aware of the significant repercussions that would result from a failure to properly secure the Private Information they maintained.

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

61. The ramifications of Berkadia's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

62. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendants' conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

63. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[14] "Fullz" packages, which includes "extra information about

[14] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.

the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[15]

64. Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breach. From a study, 28% of individuals affected by a data breach become victims of identity fraud - this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[16]

65. Further, Plaintiff and Class Members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breach.

66. Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[17]

67. Plaintiff and Class Members are also at a continued risk because their information remains in Berkadia's systems, which the Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as Berkadia fails to take necessary and appropriate security and training measures to protect the Private Information in their possession.

---

[15] *Id*.

[16] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KnowBe4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last accessed March 19, 2026).

[17] Kathryn Parkman, *How to Report identity Theft*, ConsumerAffairs (Feb. 17, 2022), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html.

68. Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

69. As a result of Berkadia's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Berkadia fails to undertake appropriate and adequate measures to protect the Private Information entrusted to them.

70. The fact is that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and Plaintiff and Class Members have not been provided any compensation for the unauthorized release and disclosure of their PII.

## CLASS ALLEGATIONS

71. Plaintiff brings this class action on behalf of himself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States whose Private Information was compromised in the Data Breach (the "Class").

73. Excluded from the Class are Berkadia, their subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

74. This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when he moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

75. **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are, at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendants' records, including but not limited to the files implicated in the Data Breach.

76. **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

a. Whether Defendants had a duty to protect the Private Information of Plaintiff and Class Members;

b. Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached their duties thereby;

c. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct; and

d. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

77. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all customers of Defendants, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

78. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

79. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

80. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages are common to Plaintiff and each member of the

Class. If Defendants breached their duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

81. **Injunctive Relief:** Defendants have acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

82. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

83. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-82 as if fully set forth herein.

84. Plaintiff and Class Members provided their Private Information to Defendants as a condition of obtaining services from Defendants.

85. Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII collected from them from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing, maintaining, overseeing, and testing Defendants' security systems to ensure that PII in Berkadia's possession was adequately secured and protected.

86. Defendants' duty to use reasonable care arose from several sources, including but not limited to those described below.

87. Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

88. Defendants owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that their systems and networks adequately protected their Private Information.

89. Defendants had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Berkadia with their Private Information as a condition of receiving resources was predicated on the understanding that Berkadia would take adequate security precautions to protect their PII.

90. By assuming the responsibility to collect and store this data, Defendants had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

91. Plaintiff and members of the Class entrusted Defendants with their PII with the understanding that Berkadia would safeguard their information.

92. Defendants' conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to: (1) secure their systems and exercise adequate oversight of their data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

93. Defendants knew, or should have known of, the risks inherent in collecting and storing PII, the vulnerabilities of their systems, and the importance of adequate security.

Defendants should have been aware of numerous, well-publicized data breaches in the months and years preceding the Data Breach.

94. Defendants breached their common law duty to act with reasonable care in collecting and storing the Private Information of their customers, which exists independently from any contractual obligations between the parties. Specifically, Defendants breached their common law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

a. failing to adopt reasonable data security measures, practices, and protocols;

b. failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' PII;

c. storing current and former Plaintiff's and Class Members' PII longer than reasonably necessary;

d. failing to comply with industry-standard data security measures; and

e. failing to timely disclose critical information regarding the nature of the Data Breach.

95. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

96. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

97. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their PII is used; (ii) the publication and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost

opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Berkadia fails to undertake appropriate and adequate measures to protect it; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

98. But for Defendants' wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

99. There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

100. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly

increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

101. As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

102. In addition, Berkadia had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

103. Defendants' violation of federal statutes, including the FTC Act, constitutes negligence *per se*.

104. Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

105. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members are therefore entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

106. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-82 as if fully set forth herein.

107. In connection with obtaining services from Defendants, Plaintiff and Class Members entered into implied contracts with Berkadia.

108. Plaintiff and Class Members were required to deliver their Private Information to Defendants as part of the process of obtaining services from Defendants.

109. Defendants required Class Members to provide their Private Information in order to obtain services from Defendants. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

110. Defendants accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

111. When Plaintiff and Class Members provided their PII to Berkadia, either directly or indirectly, as a pre-condition for services, they entered into implied contracts with Berkadia.

112. Pursuant to these implied contracts, in exchange for the consideration and PII provided by Plaintiff and Class Members, Defendants agreed to, among other things, and Plaintiff and Class Members understood that Berkadia would: (1) provide products and/or services to Plaintiff and Class Members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII; and (3) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

113. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

114. Implicit in the agreement between Plaintiff and Class Members and Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

115. The protection of PII was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendants, on the other hand. Indeed, as set forth herein, Defendants recognized their duty to provide adequate data security and ensure the privacy of their customers' PII with their practice of providing a privacy policy on their website.

116. Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendants with their PII.

117. Defendants breached their obligations under their implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII in a manner that complies with applicable laws, regulations, and industry standards.

118. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants, on the other, is demonstrated by their conduct and course of dealing.

119. On information and belief, at all relevant times, Defendants promulgated, adopted, and implemented written privacy policies whereby they expressly promised Plaintiff and Class Members that they would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

120. On information and belief, Defendants further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

121. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

122. Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that they adopted reasonable data security measures.

123. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

124. Defendants breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class in a timely manner if it was no longer needed, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

125. Defendants breached the implied contracts by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely

and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance of Private Information and storage of other personal information after Defendants knew, or should have known of, the security vulnerabilities of the systems that were exploited in the Data Breach.

126. Defendants' breach of their obligations of their implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

127. Plaintiff and Class Members suffered by virtue of Defendants' breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they have overpaid for the services they received without adequate data security.

128. As a direct and proximate cause of Defendants' breach of contract, Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Class)**

129. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-82 as if fully set forth herein.

130. Every contract in the state of New York has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

131. Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendants.

132. Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance of PII and storage of other personal information after Defendants knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

133. Defendants acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

134. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-82 as if fully set forth herein.

135. This count is plead in the alternative to the breach of implied contract count above.

136. By their wrongful acts and omissions described herein, Defendants have obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

137. Plaintiff and Class Members conferred a benefit on Defendants, whereby they provided their Private Information to Defendants in connection with receiving certain services.

138. Defendants prior to and at the time Plaintiff and Class Members entrusted them with their PII, caused Plaintiff and Class Members to reasonably believe that they would keep that Private Information secure.

139. The monies Defendants were paid in their ordinary course of business included a premium for Defendants' cybersecurity obligations and were supposed to be used by Defendants, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

140. Defendants knew that Plaintiff and Class Members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the Private Information entrusted to them. Defendants profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

141. Defendants failed to disclose facts pertaining to their substandard information systems, or defects and vulnerabilities therein before Plaintiff and Class Members made their decisions to provide Defendants with their Private Information.

142. Defendants enriched itself by hoarding the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants calculated to increase their own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security measures and diverting those funds to their own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of their Private Information.

143. Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and, as a result, Defendants were overpaid.

144. Under principles of equity and good conscience, Defendants should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon them.

145. Plaintiff and Class Members have no adequate remedy at law.

146. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

147. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

**COUNT V**
**<u>DECLARATORY JUDGMENT</u>**
**(On Behalf of Plaintiff and the Class)**

148. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-82 as if fully set forth herein.

149. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

150. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether Berkadia is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Berkadia's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

151. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Berkadia owes a legal duty to secure customers' Private Information and to timely notify impacted individuals of a data breach under the common law, and various state statutes; and

b. Berkadia continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in their possession.

152. This Court also should issue corresponding prospective injunctive relief requiring Berkadia to employ adequate security protocols consistent with law and industry standards to protect Private Information in Berkadia's data network.

153. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Berkadia. The risk of another such breach is real, immediate, and substantial. If another breach at Berkadia occurs, Plaintiff will not

have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

154. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Berkadia if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Berkadia of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Berkadia has a pre-existing legal obligation to employ such measures.

155. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Berkadia, thus eliminating the additional injuries that would result to Plaintiff and customers whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative for the Class, and appointing his counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For equitable relief enjoining Berkadia from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

D. For equitable relief compelling Berkadia to utilize appropriate methods and policies with respect to customer data collection, storage, and safety, and to disclose with specificity the

types of PII compromised as a result of the Data Breach;

E. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Berkadia's wrongful conduct;

F. Ordering Berkadia to pay for not less than ten years of credit monitoring services for Plaintiff and Class Members;

G. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

H. For an award of punitive damages, as allowable by law;

I. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

J. Pre- and post-judgment interest on any amounts awarded; and

K. Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 23, 2026

Respectfully submitted,

**LYNCH CARPENTER, LLP**

*/s/ Michael H. Sampson*
Michael H. Sampson (NY 3038049)
Nicholas A. Colella*
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
mike@lcllp.com
nickc@lcllp.com

***Attorneys for Plaintiff and the Proposed Class***
**Pro hac vice* application forthcoming